IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MILLIE MAX, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 07-4488 |
| | : | |
| v. | : | |
| | : | |
| REPUBLICAN COMMITTEE OF | : | |
| LANCASTER COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

Giles, J.                                                                                                                    October 3, 2008

Before the court is Defendants Republican Committee of Lancaster County ("RCLC"), Andrew Heath, David M. Dumeyer, and Lancaster County Republican Headquarters' ("LCRH") Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 15), Plaintiff Millie Max's Response in Opposition thereto (Doc. No. 17), and Defendants' Reply (Doc. No. 24). The court held oral arguments on this matter on January 25, 2008. For the reasons that follow, Defendants' Motion to Dismiss is granted.

### Facts and Procedural History

The court recites the facts in the light most favorable to Plaintiff.

Plaintiff Max serves as an elected committeewoman for Defendant RCLC in Lancaster County, Pennsylvania. (Am. Compl. ¶ 1.) RCLC is a political organization registered under the laws of the Commonwealth of Pennsylvania. (Am. Compl. ¶ 9.) The membership of the RCLC

is composed of one commiteeman and one committeewoman for each election district in Lancaster County who are elected by the qualified, registered Republicans from each election district. (Am. Compl. ¶ 9.) The RCLC is governed by the "Rules of the Republican Committee of Lancaster County" currently on file with the Lancaster County Board of Elections (hereinafter "Rules"). (Am. Compl. ¶ 10.) Defendant Dumeyer is the current chairman of the RCLC. (Am. Compl. ¶ 14.) As chairman, according to the rules, Dumeyer is the chief executive officer of the RCLC and its designated spokesman at all levels of Party affairs. (Am. Compl. ¶ 16.) Defendant Heath is an employee and executive director of the RCLC. (Am. Compl. ¶ 19.) Defendant LCRH is a nonprofit corporation controlled by the RCLC. (Am. Compl. ¶ 21.)

Defendant RCLC endorsed a slate of judicial candidates for the party's nomination for six open seats on the Lancaster County Court of Common Pleas in the May 15, 2007, primary election. (Am. Compl. ¶¶ 41-43.) Two of those endorsed candidates were Howard F. Knisely and Jeffery D. Wright. (Am. Compl. ¶ 44.) Plaintiff opposed Knisely and Wright and, in their place, supported other unendorsed Republican judicial candidates. (Am. Compl. ¶¶ 45-47.) During the primary election campaign, Plaintiff approached a voter who had a "Jeffery Wright" campaign sign in her yard and encouraged her to switch her support to another Republican judicial candidate such as Lancaster County First Assistant District Attorney Heidi Eakin. (Am. Compl. ¶ 48.)

On May 14, 2007, the evening before the primary election, Plaintiff received a telephone call from Defendant Heath. (Am. Compl. ¶ 49.) Heath told Plaintiff he had heard reports of persons telling Wright supporters negative information about Wright's history. (Am. Compl.¶ 49.) Heath told Plaintiff that he did not know the names of the persons telling negative

information about Wright but that he had gotten a license plate number and was having it traced. (Am. Compl. ¶ 50.)  Plaintiff told Heath that she had stopped by a home and spoken to a voter about Wright.  (Am. Compl. ¶ 52.)  Heath and Plaintiff discussed Plaintiff's opposition to Wright, and Heath accused her of telling lies about Wright.  (Am. Compl. ¶¶ 50-53.)  Heath told Plaintiff that, because of her actions, Defendants would convene a meeting after the election "at which Plaintiff . . . understood that she would likely be asked to resign her elected position as a Republican committeewoman."  (Am. Compl. ¶ 54.)

Plaintiff believes Defendants instructed poll workers to observe and report back to Defendants about her primary election day speech and campaign activities, and certain poll workers did so.  (Am. Compl. ¶¶ 56-57.)

On the primary election day, Plaintiff handed out "slate cards" to voters at her voting district's polling station.  (Am. Compl. ¶ 58.)  These slate cards encouraged voters not to support Knisely or Wright and instead encouraged them to vote for Eakin.  (Am. Compl. ¶ 58.)  The slate cards were printed at Plaintiff's expense and did not contain the RCLC's name or logo. (Am. Compl. ¶¶ 58-59.)

As a result of her May 14, 2007, conversation with Heath, Plaintiff felt compelled to restrict her speech and campaign efforts in opposition to Wright and Knisely to a small number of voters whom she personally knew rather than to all voters voting at her polling place.  (Am. Compl. ¶ 60.)  She also feared that further open opposition to Wright and Knisely and support of her candidate would result in additional adverse consequences to her personal reputation and position as committeewoman.  (Am. Compl. ¶ 61.)

Plaintiff believes that Defendants held a meeting in late May 2007 during which they

determined that she had not done any act that would permit them to forcibly remove her from her committeewoman position. (Am. Compl. ¶ 62.) She believes they intentionally decided to continue to attempt to exclude her unwanted political speech by sending her a letter, dated June 18, 2007. (Am. Compl. ¶¶ 63-64.) The body of the letter, which is printed on RCLC letterhead and signed by Defendant Dumeyer, states the following, in its entirety:

> I wanted to send this letter as a follow-up to our meeting on Thursday, May 31, 2007, and thank-you for agreeing to meet with Michael Hench and me. It's never easy to sit and review one's actions, but it is intended to spare embarrassment for you and for the Party in the General Election.
>
> It is inappropriate for a committee member, for instance, to disparage an <u>endorsed</u> candidate, especially to voters who have chosen to support the <u>endorsed</u> ticket. Obviously, promoting the positive qualities of an <u>unendorsed</u> candidate whom one supports may not be inappropriate, as long as it does not accompany negative comments about any <u>endorsed</u> candidate.
>
> It is equally inappropriate for a committee member to use one's status as a committee member outside one's own voting district to disparage endorsed candidates. That can only confuse voters who expect a united message.
>
> As for a separate slate card to distribute at the polls, it simply confuses voters. A separate slate card contradicts the Party's decisions on endorsements, casts doubt about one's role as a "team player," and suggests that personal agendas trump the collective decision made by two-thirds of one's fellow committee members in convention. In these cases, if you have serious reservations about the choice of candidates endorsed by the Party, you should resign from the Committee. This frees one to support wholeheartedly their chosen candidate(s) and to speak against the endorsed candidate(s).
>
> Similarly, the Party's rules do <u>NOT</u> permit a committee member to advocate a nominee in the General Election who is not both a registered Republican and a nominee of our Party. . . . Thus, if you wish specifically to support Ms. Eakin's election to the County

> bench, the proper course of action is to resign your position from the Committee. If you feel you simply cannot support the entire Republican ticket, then <u>absenting yourself from the polls</u> could be sufficient, provided there is no other "open and active support" of candidates other than our GOP slate of candidates.
>
> You have some thinking and decision-making to do. I would very much like to have you behind our slate of candidates in the fall, but if your conscience or personal convictions prevent you from doing so, I have laid out two alternative courses of action for your consideration.
>
> Please let me know shortly what action your prayerful consideration leads you to take. Again, my thanks for sitting down to discuss this and my best wishes for a satisfactory decision.

(Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Mem."), Ex. A, Letter from Dumeyer to Max, June 18, 2007 ("Letter") (emphasis in original).)

As a result of the Defendants' Letter, Plaintiff did not campaign for or against certain Republican judicial candidates in the 2007 general election, although she would have done so if not for the letter. (Am. Compl. ¶¶ 68-69.) Also as a result of the letter, Plaintiff did not send an election newsletter to voters in her precinct as she had customarily done for previous general elections. (Am. Compl. ¶ 70.)

Plaintiff brought suit against Defendants pursuant to 42 U.S.C. § 1983. (Am. Compl. ¶ 1.) Her Amended Complaint contains five counts. Count I claims that Heath's statement before the primary election that he would use the investigatory police powers of the Commonwealth of Pennsylvania by having a license plate traced placed an impermissible chill on Plaintiff's speech in violation of her First and Fourteenth Amendment rights. (Am. Compl. ¶¶ 87-90.) Count II claims that Heath's statement before the primary election that Plaintiff's opposition to endorsed candidates would result in her removal as a committeewoman placed an impermissible chill on

Plaintiff's speech in violation of her First and Fourteenth Amendment rights. (Am. Compl. ¶¶ 92-95.) Count III claims that the circumstances alleged in Counts I and II, combined, placed an impermissible chill on Plaintiff's speech in violation of her First and Fourteenth Amendment rights. (Am. Compl. ¶¶ 97-105.) Count IV claims that Defendants' Letter informing Plaintiff that it is inappropriate for a committee member to disparage an endorsed candidate or campaign for unendorsed candidates placed a content-based regulation on Plaintiff's speech in violation of her First and Fourteenth Amendment rights. (Am. Compl. ¶¶ 102-109.) Count V claims that Defendants' Letter instructing Plaintiff to either endorse Defendants' candidates, resign her committee position, or absent herself from the polls on primary election day placed an impermissible chill on Plaintiff's speech in violation of her First and Fourteenth Amendment rights. (Am. Compl. ¶¶ 111-120.)

For the reasons stated below, Defendants' Motion is granted.

**Standard of Review**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)) (stating that this statement of the Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007); see id. at 231 (stating that Twombly does not undermine the principle that the court must accept all of plaintiff's allegations as true and

draw all reasonable inferences therefrom).  To withstand a motion to dismiss under Rule 12(b)(6), "'[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (quoting Twombly, 127 S. Ct. at 1965); see Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 321 (3d Cir. 2008) (following Phillips).  This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965) (quotations omitted).

"It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  However, the Third Circuit has determined that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Ben. Guar. Corp. v. White Consol. Inds., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted).  See also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court." (quoting 62 Fed. Proc., L. Ed. § 62:508)). "[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document,

the plaintiff is on notice that the document will be considered." <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 (3d Cir. 2004).

In ruling on Defendants' motion, this court will consider the June 18, 2007, Letter from Dumeyer to Plaintiff, which Defendants attached to their Motion to Dismiss. (<u>See</u> Letter.) Plaintiff references and quotes from this document in her Amended Complaint. (Am. Compl. ¶ 64.§) Plaintiff does not dispute the authenticity of the Letter that is attached as an exhibit to Defendants' motion. Thus, the Letter is properly considered as if it were attached to the Complaint.

## **Discussion**

Section 1983 provides remedies for deprivations of rights established by the Constitution. <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006). "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [the plaintiff] of a right secured by the Constitution or the laws of the United States." <u>Id.</u> (citing <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49-50 (1999)). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all. <u>Nicini v. Morra</u>, 212 F.3d 798, 806 (3d Cir. 2000) (quoting <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 n. 5 (1998)). If the claim involves alleged deprivation of a constitutional right, the court must determine whether the action was taken under color of law. This is a threshold matter. <u>Versarge v. Twp. of Clinton, N.J.</u>, 984 F. 2d 1359, 1363 (3rd Cir. 1993). "Although a private person may cause a deprivation of [a constitutional] right, he may be

subjected to liability under § 1983 only when he does so under color of law." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978).

In the Commonwealth of Pennsylvania, each county may have a county committee for each political party in that county. 25 P.S. § 2837.

> The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of the party, as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party.

Id. The Lancaster County Board of Elections has determined that RCLC is a political party, and the RCLC is registered as such with the Commonwealth of Pennsylvania. (Am. Compl. ¶¶ 9, 29.) See also 25 P.S. § 2831. Political parties in the Commonwealth are entitled to nominate candidates at primaries. 25 P.S. § 2861.[1] They do so by a vote of the party electors. 25 P.S. § 2831. "No person who is not registered and enrolled as a member of a political party shall be entitled to vote at any primary of such party or to be elected or serve as a party officer, or a member or officer of any party committee." 25 P.S. § 2832.

Plaintiff alleges that the RCLC, a political party, is a state actor in a primary election and, thus, Defendants' actions toward Plaintiff before the 2007 primary election were state actions.

---

[1] According to Pennsylvania statute,

> Each county board shall determine which organizations are political parties within the county, within the meaning of section 801(b), and not later than the thirteenth Tuesday preceding each primary shall transmit to the Secretary of the Commonwealth a list of said political parties which shall be entitled to nominate candidates at primaries in said county.

25 P.S. § 2861(b)

(Am. Compl. ¶ 3.)  Alternatively, Plaintiff alleges that Defendants acted under color of state law because of their involvement in determining who shall appear on the general election ballot as mandated by the Commonwealth of Pennsylvania.  (Am. Compl. ¶ 12.)

In most circumstances, private political parties are simply private organizations who themselves enjoy constitutional rights.  Eu v. San Francisco County Democratic Cent. Committee, 489 U.S. 214, 224 (1989) ("It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments.").  Those rights include the right to associate and the right to exclude.

> [T]he First Amendment protects the freedom to join together in furtherance of common political beliefs, which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.  That is to say, a corollary of the right to associate is the right not to associate."

California Democratic Party v. Jones, 530 U.S. 567, 574 (2000) (internal quotations and citations omitted).  Therefore, "[a] political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."  New York State Bd. of Elections v. Lopez Torres, 128 S. Ct. 791, 797 (2008).

Nonetheless, political parties in the Commonwealth of Pennsylvania may engage in state action in some circumstances, thereby subjecting them to claims under Section 1983.  For instance, when a political party, exercising the authority delegated to it by the state, determines that only whites may vote in a primary election, that constitutes state action.  See, e.g., Smith v. Allwright, 321 U.S. 649 (1944); Terry v. Adams, 345 U.S. 461 (1953).

> These rights are circumscribed . . . when the State gives the party a role in the election process – as New York has done . . . by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot.  Then, for example, the party's racially discriminatory action may become state action that violates the Fifteenth Amendment.

Lopez Torres, 128 S. Ct. at 797-798 (citing Democratic Party of United States v. Wisconsin ex rel. La Follette, 450 U.S. 107(1981); California Democratic Party v. Jones, 530 U.S. 567 (2000)).

The court finds that Defendants actions toward Plaintiff were not state actions that would subject Defendants to Section 1983 claims.  Defendants' actions were internal to the party and are permissible by statute of the Commonwealth of Pennsylvania, 25 P.S. § 2837, and by the First and Fourteenth Amendments of the United States Constitution.  Plaintiff is correct that the RCLC has a role as a state actor in primary elections, (Am. Compl. ¶ 3), but that does not make all of RCLC's actions state actions, as Plaintiff contends.

The court also finds that Defendants' actions toward Plaintiff were not taken under color of state law.  There are three tests for state action for Section 1983 purposes: 1) the "public function" test; 2) the "symbiotic relationship" test; and 3) the "close nexus" test.  Brown v. Philip Morris Inc., 250 F.3d 789 (3d Cir. 2001).  The public function test asks whether the defendant performs a function that is "traditionally the exclusive prerogative of the State." Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974)).  Defendants were not performing such a function when they stated they would trace a license plate number[2] or when they told her not to oppose the party or to resign.

---

[2] Plaintiff does not allege that Heath threatened to trace a license plate number after having received her license plate number.

The symbiotic relationship test asks whether the government has "insinuated itself into a position of interdependence" with the defendant.  Brown, 250 F.3d at 803 (quoting Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961).  See also Benn v. Universal Health System, Inc., 371 F.3d 165, 173 (3d Cir. 2004) ("A symbiotic relationship demands a close association of mutual benefit between the state and the private entity or person.") (internal quotations and citation omitted).  The symbiotic relationship test provides only a narrow basis for finding that private action may be attributed to the state.  Crissman v. Dover Downs Entertainment, Inc., 289 F.3d 231, 242 (3d Cir. 2002) (en banc).  Here, Plaintiff has not alleged facts that support a symbiotic relationship between the state and Defendants.

The close nexus test requires a plaintiff to show that "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  Jackson, 419 U.S. at 351.  "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains."  Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).  Here, again, Plaintiff has not pled circumstances that support a close nexus between the state and Defendants' actions toward Plaintiff.  The court finds that Defendants' actions were internal to the political party.  Thus, the court finds that Plaintiff has not pled that Defendants acted under color of state law when they reprimanded her for her political speech.  Plaintiff's Section 1983 claims are dismissed.

An Order follows.